FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 2 3 2012

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| HOWARD ELLIS, | 3:08-cv-00657-ECR (WGC) |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| BENEDETTI, et. al. | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's motion for injunctive relief. (Doc. #50.)[1] Defendants have opposed (Doc. # 55) and Plaintiff replied (Doc. # 66). Also before the court is Plaintiff's motion for sanctions under Rule 11 (Doc. # 68), which Defendants opposed (Doc. # 73). Plaintiff filed a reply. (Doc. # 75.) In addition, Plaintiff has moved for an evidentiary hearing with respect to his motion for injunctive relief. (Doc. # 74.) Defendants opposed (Doc. # 80) and Plaintiff replied (Doc. # 83). Finally, Plaintiff filed a motion to correct the record. (Doc. # 76.) Defendants' opposed (Doc. # 81) and Plaintiff replied (Doc. # 85).

After a thorough review, the court recommends that each of Plaintiff's motions (Doc. # 50, # 68, # 74, and # 76) be denied.

## I. BACKGROUND

At all relevant times, Plaintiff Howard Ellis (Plaintiff) was an inmate in custody of the

---

[1] Refers to the court's docket number.

1  Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 38) at 1.) Plaintiff is
2  currently housed at Lovelock Correctional Center (LCC). (*Id.*) Plaintiff, a *pro se* litigant, brings
3  this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are James Benedetti, Tony Corda,
4  Robert Hartman, Don Helling, Jeremy Jackson, Marsha Johns, Peter Ladner, Shannon Moyle,
5  Roy Plumlee, Rex Reed, Ruben Vidaurii, Brian Williams, and Mark Wright. (Doc. # 38 at 2-5.)

6  Upon screening Plaintiff's Amended Complaint, the court determined that Plaintiff sets
7  forth the following colorable claims: (1) Count I-procedural due process related to a
8  disciplinary charge; (2) Count II- Eighth Amendment excessive force; (3) Count III- Eighth
9  Amendment deliberate indifference to serious medical need; (4) Count III- First Amendment
10 access to courts; (5) Count IV- procedural due process related to a disciplinary hearing;
11 (6) Count IV- conspiracy; (7) Count VI- First Amendment retaliation; (8) Count VII- Eighth
12 Amendment excessive force; (9) Count VII- Eighth Amendment deliberate indifference to
13 serious medical need; (10) Count VII- First Amendment retaliation; (11) Count VIII-
14 conspiracy; and (12) Count VIII- First Amendment retaliation. (Doc. # 37.)

## II. MOTION FOR SANCTIONS (DOC. # 68)

16 Plaintiff has filed a motion for sanctions under Federal Rule of Civil Procedure 11. (Doc.
17 # 68.) Essentially, Plaintiff asserts that Defendants' submission of Exhibit F, which is a copy
18 of Plaintiff's inmate history, or grievance history, in support of their opposition to Plaintiff's
19 motion for preliminary injunction, was retaliatory. (Doc. # 68.)

20 An attorney is subject to Rule 11 sanctions if he presents a "pleading, written motion, or
21 other paper" to the court that is for an "improper purpose, such as to harass, cause unnecessary
22 delay, or needlessly increase the cost of litigation," "the claims, defenses, and other legal
23 contentions are [not] warranted by existing law," "the factual contentions [do not] have
24 evidentiary support," or if "denials of factual contentions are [not] warranted." Fed. R. Civ.
25 P. 11(b)(1)-(4).

26 The court agrees with Defendants that Exhibit F was properly filed in support of their
27 opposition to Plaintiff's motion for injunctive relief, and not for any of the improper purposes
28 identified in Rule 11. (*See* Doc. # 73.)

Moreover, Plaintiff failed to comply with the safe harbor provision in Rule 11(c)(2) which requires that the motion be served under Rule 5, but not filed if the alleged improper filing is withdrawn or corrected within 21 days after service. Fed. R. Civ. P. 11(c)(2). Here, Plaintiff served the motion on Defendants on June 29, 2011 (Doc. # 68-1), and filed the motion on July 1, 2011 (Doc. # 68).

For these reasons, Plaintiff's motion for sanctions (Doc. # 68) should be denied.

### III. MOTION FOR CORRECTION OF RECORD (DOC. # 76)

Plaintiff has filed a motion to correct the record. (Doc. # 76.) It appears that Plaintiff takes issue with the way his motion (Doc. # 50) is characterized in the docket. (*Id.* at 2.) The court finds there is no need to correct the record, as it will analyze Plaintiff's motion by the substantive nature of the motion, and not the title. Moreover, Plaintiff's motion seeks injunctive relief, and therefore, the motion is accurately characterized in the docket. Accordingly, Plaintiff's motion to correct the record (Doc. # 76) should be denied.

### IV. MOTION FOR EVIDENTIARY HEARING (DOC. # 74)

Plaintiff has filed a motion requesting an evidentiary hearing on his motion for injunctive relief. (Doc. # 74.)

Local Rule 78-2 provides, "[a]ll motions may, in the Court's discretion, be considered and decided with or without a hearing." L.R. 78-2. The court has reviewed Plaintiff's motion (Doc. # 50), as well as Defendants' opposition (Doc. # 55) and Plaintiff's reply (Doc. # 66), and has determined that a hearing is not necessary. Accordingly, Plaintiff's motion for an evidentiary hearing (Doc. # 74) should be denied.

### V. MOTION FOR INJUNCTIVE RELIEF (Doc. # 50)

**A. SUMMARY OF ARGUMENT**

**1. Plaintiff's Motion**

Plaintiff has filed a motion seeking injunctive relief against Dr. John Scott and Medical Director Robert Bannister, as follows: (1) that he see a doctor; (2) that he be permitted to possess his "keep on person" (KOP) medications; (3) that he be put on a previously prescribed low sodium diet; and (4) that he be provided all lawfully necessary medical treatment at LCC,

3

1  and not at Northern Nevada Correctional Center (NNCC) or the correctional facility in
2  Southern Nevada. (Doc. # 50 at 2.)

3      With respect to his medical claim, Plaintiff argues that the prison has no rational
4  explanation why they allow Plaintiff to possess his KOP medications, but deny possession of
5  other medications. (Doc. # 50 at 3.) He claims that a correctional officer confiscated his KOP
6  medication on November 5, 2010. (*Id.* at 4 ¶ 2.) He also asserts that on May 26, 2011, he began
7  experiencing severe breathing difficulties, dizziness, sweating and sickness. (*Id.* at ¶ 3.) He says
8  that his symptoms did not stabilize until after taking his medications at the evening pill call.
9  (*Id.*)

10      Plaintiff claims that at "sick call" on May 27, 2011, he asked the nurse to make him a
11  doctor's appointment, and sent a follow up to schedule an appointment on May 30, 2011. (Doc.
12  # 50 at 4 ¶ 4.) He contends he had not seen a doctor since December 29, 2009. (*Id.*)

13      Plaintiff also requests injunctive relief against Susan Sparta, the law supervisor, and
14  Warden Robert LeGrand, as follows: (1) obey the court's order to copy Plaintiff's legal
15  documents in this action; (2) permit Plaintiff to personally log his pleadings to the courts in the
16  record; (3) order the LCC law library to submit mail log records of May 23, 2011 in this action;
17  and (4) submit to the court all records concerning Plaintiff's classification. (Doc. # 50 at 2.)

18      Plaintiff also argues that the warden and LCC law library have refused to obey the court's
19  order for copy work in this case on April 25, 2011, and this denies his access to the courts.
20  (Doc. # 50 at 3, 5 ¶ 5.) He further asserts that he was refused permission to personally log his
21  motions on May 23, 2011. (Doc. # 50 at ¶ 6.)

22      Plaintiff asserts that his protective custody status also warrants injunctive relief because
23  it constitutes an atypical condition of confinement. (Doc. # 50 at 3.) He claims that on
24  August 15, 2010, he was transferred from administrative segregation at Warm Springs
25  Correctional Center to LCC. (Doc. # 50 at 5.) He appeared before a classification committee
26  on August 16, 2010, and requested protective custody. (*Id.*) Plaintiff claims that Defendant
27  Vidaurri told inmates in the segregation unit that Plaintiff was a protective custody inmate who
28  was afraid to come to the yard at Warm Springs. (*Id.*) He claims he filed an emergency

grievance on August 9, 2010, and Defendant Vidaurri kicked his door to intimidate Plaintiff from filing grievances. (*Id.*) The grievance was denied by James Baca. (*Id.*) Plaintiff states he has never been a member of a security threat group, and has never appeared before a classification committee requesting a review of such status. (*Id.* at 6.) Nor has he petitioned NDOC to return him to general population. (*Id.*)

### 2. Defendants' Opposition

Defendants argue: (1) Plaintiff cannot show that the four requirements for injunctive relief have been met; (2) he cannot meet the stringent standard required for mandatory relief; (3) the requested relief goes far beyond constitutional minimums; (4) Plaintiff cannot seek to enjoin persons who are not named defendants in this case, on facts that are unrelated to his Amended Complaint; and (5) the motion is frivolous, malicious, and deceitful. (Doc. # 55.)

## B. LEGAL STANDARD

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d

1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires

6

> preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

## C. DISCUSSION

### 1. Plaintiff's Request for Injunctive Relief Related to copying legal documents, logging pleadings, and submitting records and mail log records to the court

Plaintiff requests injunctive relief in the form of an order that Susan Sparta, the law supervisor, and Warden Robert LeGrand: (1) obey the court's order to copy Plaintiff's legal documents in this action; (2) permit Plaintiff to personally log his pleadings to the courts in the record; (3) submit mail log records of May 23, 2011 in this action; and (4) submit to the court all records concerning Plaintiff's classification. (Doc. # 50 at 2.)

Defendants are correct that neither Susan Sparta nor Robert LeGrand are named defendants in this action. Moreover, the access to courts allegations in Plaintiff's Amended Complaint relate to Defendants allegedly fabricating reasons to transfer Plaintiff to Warm Springs, which led to the dismissal of his habeas corpus petition because of the alleged inadequacy of Warm Springs' law library. (Doc. # 38 at 7, Doc. # 37 (Screening Order) at 8.)

Therefore, the requested relief is not connected to the instant action. Although the Ninth Circuit has not addressed the issue directly, other circuits have repeatedly held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471

7

(8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). Injunctive relief is used to address issues related to the underlying violations presented in the complaint. Plaintiff is not permitted to file a complaint in federal court and then use that action as a forum to air his unrelated grievances. Such complaints are properly lodged using the prison grievance system and, if they remain unresolved, by filing a new action. Accordingly, Plaintiff's request for injunctive relief related to copying legal documents, personally logging in his pleadings, submitting mail log records, and submitting records regarding Plaintiff's classification, should be denied.

### 2. Segregated Housing Status

Plaintiff includes various comments about his segregated housing status, yet he has not requested any particular injunctive relief in this regard. Nor has Plaintiff addressed any of the requirements for injunctive relief, *i.e.*, likelihood of success on the merits, irreparable injury, balance of hardships, or public interests.

As a result, the court finds that Plaintiff has failed to meet his burden of establishing he is entitled to injunctive relief, and his motion should be denied with respect to his segregated housing status.

### 3. Medical Needs

#### 1. Likelihood of success on the merits

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

#### a. Standard-Eighth Amendment deliberate indifference to serious medical need

The Eighth Amendment prohibits the imposition of cruel and unusual punishment, and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citation and quotations omitted).

8

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle*, 429 U.S. at 104. A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [the court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (citation omitted). "[S]tate prison authorities have wide discretion regarding the nature and extent of medical treatment." *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). "Budgetary constraints, however, do not justify cruel and unusual punishment." *Id.*

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware

of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt*, 865 F.2d at 201 (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060; *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion regarding the best course of medical treatment does not amount to deliberate indifference); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

### b. Analysis

Plaintiff requests an order that he be seen and treated by a doctor at LCC; that he be permitted to possess his KOP medications; and that he be put on a low sodium diet. (Doc. # 50 at 2.)

Regarding his request to see a physician, Defendants have submitted the declaration of

10

Karen L. Walsh, R.H.I.T., who has reviewed Plaintiff's medical records. (Doc. # 55-1 (Walsh Decl.) at ¶ 4.) Ms. Walsh states that pursuant to LCC policy, Plaintiff is required to fill out an inmate medical request form and submit it to correctional staff if he would like to see a physician. (*Id.* at ¶ 5; *see also* Medical Directive 433 at Doc. # 55-4 2-4.) Plaintiff has not requested an appointment to see a physician since he has arrived at LCC. (*Id.*) Therefore, Plaintiff has not shown a likelihood of success on the merits with respect to this claim.

Nor has Plaintiff shown a likelihood of success on the merits with respect to his claim that he should see a doctor at LCC instead of at some other NDOC facility. Plaintiff has not provided evidence establishing an inadequacy of medical treatment provided at other NDOC facilities as compared with LCC, and therefore, his claim amounts merely to a difference of opinion in how he is treated which does not rise to the level of deliberate indifference. *See McGuckin*, 974 F.2d at 1059.

With respect to his KOP medications, Ms. Walsh states that Plaintiff's KOP medications have been refilled upon his request, with the exception of his heart medications, Amiodarone and Coreg, which are available to him via pill call to ensure compliance with directions and regular dosages. (Doc. # 55-1 (Walsh Decl.) at ¶ 6.) Because these medications are available to Plaintiff, the court finds Plaintiff has not established a likelihood of success on the merits. Instead, what Plaintiff has asserted is a difference in opinion with respect to the manner he is given his medication, which is not constitutionally actionable. *See McGuckin*, 974 F.2d at 1059.

Finally, with respect to Plaintiff's request for a low sodium diet, the court finds Plaintiff has not shown a likelihood of success on the merits. Other than concluding that he needs this diet because he suffers from high blood pressure, Plaintiff has not provided any evidence to support his claim. Moreover, according to Ms. Walsh, Plaintiff has refused to see a cardiologist to be placed on a low sodium diet. (Doc. # 55-1 (Walsh Decl.) at ¶ 7.) He also refused a low sodium diet on June 24, 2010. (*Id.*)

### 2. Irreparable injury

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to

prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

Plaintiff argues that the failure to grant the requested injunctive relief based on Plaintiff's medical claims will put Plaintiff in imminent danger. (Doc. # 50 at 3.) Other than this conclusory statement, Plaintiff has not specifically addressed how he will suffer irreparable injury if the requested injunctive relief is not granted. Accordingly, Plaintiff has failed to meet his burden in this regard.

### 3. Balance of hardships

A party seeking injunctive relief "must establish...that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

Plaintiff failed to address the balance of hardships factor.

### 4. Public interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff similarly failed to address the public interest factor.

### 5. Conclusion

Plaintiff has not shown a likelihood of success on the merits with respect to any of the medical claims for which he seeks injunctive relief. Coupled with the fact that he did not support his claim of irreparable injury with any evidence, and failed to address the remaining injunctive relief factors, the court finds Plaintiff's request for injunctive relief should be denied.

## VI. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

1) **DENYING** Plaintiff's motion for sanctions (Doc. # 68);

2) **DENYING** Plaintiff's motion to correct the record (Doc. # 54);

3) **DENYING** Plaintiff's motion for an evidentiary hearing (Doc. # 74); and

4) **DENYING** Plaintiff's motion for injunctive relief (Doc. # 50).

///

///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 23, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE