1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

7

8

HOWARD ELLIS,                              )        3:08-cv-00657-ECR (WGC)
                                           )
            Plaintiff,                      )        **REPORT AND RECOMMENDATION**
                                           )        **OF U.S. MAGISTRATE JUDGE**
      vs.                                  )
                                           )
BENEDETTI, et. al.                         )
                                           )
                                           )
            Defendants.                     )
_____)

9

10

11

12

13

      This Report and Recommendation is made to the Honorable Edward C. Reed, Jr.,
Senior United States District Judge. The action was referred to the undersigned Magistrate
Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before
the court is Defendants' Motion to Dismiss In Part. (Doc. #101, Add. (Doc. # 119).)[1] Plaintiff
opposed (Doc. #142) and Defendants have replied (Doc. # 156). After a thorough review, the
court recommends that Defendants' motion be granted in part and denied in part.

14

15

16

17

18

19

## I. BACKGROUND

20

      At all relevant times, Plaintiff Howard Ellis (Plaintiff) was an inmate in custody of the
Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 38) at 1.) Plaintiff is
currently housed at Lovelock Correctional Center (LCC). (*Id.*) Plaintiff, a *pro se* litigant, brings
this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are James Benedetti, Tony Corda,
Robert Hartman, Don Helling, Jeremy Jackson, Marsha Johns, Peter Ladner, Shannon Moyle,
Roy Plumlee, Rex Reed, Ruben Vidaurri, Brian Williams, and Mark Wright. (Doc. # 38 at 2-5.)

      Upon screening Plaintiff's Amended Complaint, the court determined that Plaintiff sets

21

22

23

24

25

26

27

28

_____

[1] Refers to court's docket number.

forth the following colorable claims: (1) Count 1-procedural due process related to a disciplinary charge; (2) Count 2-Eighth Amendment excessive force and Eighth Amendment deliberate indifference to a serious medical need; (3) Count 3-First Amendment Access to Courts; (4) Count 4-procedural due process related to a disciplinary hearing and conspiracy; (5) Count 6-First Amendment retaliation; (6) Count7-Eighth Amendment excessive force and Eighth Amendment deliberate indifference to a serious medical need; (7) Count 8-First Amendment retaliation and conspiracy. (Screening Order (Doc. # 37).)

Defendants now move to dismiss Plaintiff's Amended Complaint in part on various grounds, including failure to exhaust administrative remedies and failure to state a claim upon which relief may be granted. (Doc. # 101.)

## II.  LEGAL STANDARD

### A.  Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical

1   procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006).

2   "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'.

3   Defendants must show that Plaintiff failed to meet both the merits and compliance tests to

4   succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

5          The failure to exhaust administrative remedies is treated as a matter in abatement and

6   is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108,

7   1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative

8   remedies is an affirmative defense, and defendants bear the burden of raising and proving

9   failure to exhaust.  *Id.*  A court, in deciding a motion to dismiss based on exhaustion, may look

10  beyond the pleadings and decide disputed issues of fact without converting the motion into one

11  for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*,

12  837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing

13  a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim

14  without prejudice." *Id.* at 1120.

15         For prisoners within the NDOC system, exhaustion of administrative remedies requires

16  complying with the inmate grievance procedure set forth in NDOC Administrative Regulation

17  (AR) 740. (Doc. # 101-8 Ex. T.) Under the version of AR 740 effective during the time period

18  in question, the procedure consisted of: (1) an informal level grievance; (2) a first level

19  grievance; and (3) a second level grievance. (Doc. # 101-8 Ex. T at 19.)

20  **B. Federal Rule of Civil Procedure 12(b)(6)**

21         "A dismissal under Federal Rule of Civil Procedure 12(b)(6) is essentially a ruling on a

22  question of law." *North Star Int'l v. Ariz. Corp. Comm'n.,* 720 F.2d 578, 580 (9th Cir. 1983)

23  (citation omitted).Under Rule 8(a), "a claim for relief must contain...a short and plain

24  statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The

25  Supreme Court has found that at minimum, a plaintiff should state "enough facts to state a

26  claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

27  (2007). The complaint need not contain detailed factual allegations, but it must contain more

28

1   than "a formulaic recitation of the elements of a cause of action." *Id.* at 555 (citation omitted).

2   The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice

3   of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and

4   citation omitted).

5       In considering a motion to dismiss for failure to state a claim upon which relief may be

6   granted, all material allegations in the complaint are accepted as true and are to be construed

7   in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.2d 336,

8   337-38 (9th Cir. 1996) (citation omitted). However, this tenet is "inapplicable to legal

9   conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements

10  of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation

11  omitted). "While legal conclusions can provide the framework of a complaint, they must be

12  supported by factual allegations." *Id.* at 679. In addition, pro se pleadings must be liberally

13  construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("we continue to construe

14  *pro se* filings liberally when evaluating them under *Iqbal*"). As a general rule, the court may not

15  consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state

16  a claim without converting it into a motion for summary judgment. *See Lee v. City of Los

17  Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

18      Portions of Defendants' argument rely on materials outside the pleadings, and the court

19  will treat those portions of Defendants' motion as one for summary judgment. In an action

20  involving a pro se plaintiff, the court must inform the plaintiff "that it is considering more than

21  the pleadings and must afford a reasonable opportunity to present all pertinent material."

22  *Anderson v. Angelone*, 86 F.3d 932, 934-35 (9th Cir. 1996) (citing *Klingele v. Eikenberry*,

23  849 F.2d 409, 411-12 (9th Cir. 1988)).

24      On November 8, 2011, the parties were provided with notice of the motion pursuant to

25  the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v.

26  Rowland*, 154 F.3d 952 (9th Cir. 1998). (Doc. # 105.) Plaintiff received notice of the court's

27  intent to consider more than the pleadings, was given a reasonable opportunity to present

28                                         4

1  evidence, and opposed Defendants' motion.  Therefore, the court will now set forth the

2  summary judgment standard that will be utilized in analyzing those arguments.

3  **C. Summary Judgment**

4  "The purpose of summary judgment is to avoid unnecessary trials when there is no

5  dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,

6  18 F.3d 1468, 1471 (9th Cir.  1994) (citation omitted). All reasonable inferences are drawn in

7  favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir.  2008) (citing

8  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Summary judgment is appropriate

9  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

10 there is no genuine issue as to any material fact and that the movant is entitled to judgment as

11 a matter of law." *Id*. (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the

12 material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

13 at 250.

14 The moving party bears the burden of informing the court of the basis for its motion,

15 together with evidence demonstrating the absence of any genuine issue of material fact.

16 *Celotex Corp.  v.  Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

17 in an inadmissible form, only evidence which might be admissible at trial may be considered

18 by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

19 In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

20 determining whether a fact is material; (2) determining whether there is a genuine issue for the

21 trier of fact, as determined by the documents submitted to the court; and (3) considering that

22 evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As

23 to materiality, only disputes over facts that might affect the outcome of the suit under the

24 governing law will properly preclude the entry of summary judgment; factual disputes which

25 are irrelevant or unnecessary will not be considered. *Id*.  at 248.

26 In determining summary judgment, a court applies a burden shifting analysis. "When

27 the party moving for summary judgment would bear the burden of proof at trial, 'it must come

28

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not

significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

### III. DISCUSSION

**A.  Count 1**

In Count 1, the court found that Plaintiff states a colorable due process claim. (Doc. # 37 at 4-5.) Plaintiff alleges that at a disciplinary hearing defendant Plumlee denied Plaintiff his right to call another inmate as a witness, denied Plaintiff inmate substitute counsel, and improperly recorded the documentation and findings from the hearing. (Doc. # 38 at 6.) Plaintiff further alleges that defendant Williams denied Plaintiff his due process rights by upholding defendant Plumlee's disciplinary hearing findings and denying second level administrative review. (*Id.*)

Defendants argue that Count 1 fails to state a due process claim upon which relief may be granted as to defendants Plumlee and Williams. (Doc. # 101 at 5-8.)  Plaintiff counters that he has stated a claim for relief in Count 1. (Doc. # 142 at 14-15.)

When an inmate faces disciplinary charges, due process requires that the inmate receive: (1) written notice of charges; (2) at least twenty-four (24) hours between the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally complex.[2] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

**1. Defendant Plumlee**

Defendant Plumlee's argument is based on materials outside of the operative complaint,

---

[2]Inmates are not entitled to the aid of trained legal counsel. *Wolff*, 418 U.S. at 591-92, n. 2 ("There is considerable force to the argument that counsel on either side would be out of place in these disciplinary proceedings, and the practical problems of providing appointed counsel in these proceedings may well be insurmountable.").

7

including Plaintiff's disciplinary history report (Doc. # 101-2 Ex. A), the Notice of Charges (Doc. # 101-2 Ex. B), and Administrative Regulation 707 (Doc. # 101-3 Ex. C). As stated above, the court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim without converting it into a motion for summary judgment. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Defendant Plumlee argues that he was not the charging employee, but the disciplinary hearing officer, and as such, had discretion to deny Plaintiff's right to call a witness under NDOC policies. (Doc. # 1-1 at 6.) Defendant Plumlee maintains that the witness Plaintiff wished to call was the same inmate Plaintiff refused to have as his cell mate, and would not have been able to offer relevant testimony as to what took place between Plaintiff and the charging officer. (Doc. # 101 at 6.) Defendant Plumlee references Exhibit B in making this argument. (*Id.*) Exhibit B appears to be the Notice of Charges for an incident that occurred on April 10, 2007. (Doc. # 101-2 (Ex. B) at 5.

While prison officials must make individualized determinations to limit the calling of witnesses, they must eventually explain their reasons for so limiting the prisoner's ability to defend himself. *See Ponte v. Real*, 471 U.S. 491, 497 (1985)*; Serrano v. Francis*, 345 F.3d 1071, 1077-78 (9th Cir. 2003); *Mitchell v. Dupik*, 75 F.3d 517, 525 (9th Cir. 1996); *Bartholomew v. Watson*, 665 F.2d 915, 917-18 (9th Cir. 1982). In other words, "officials need not provide inmates an unfettered right to call witnesses, but they must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano*, 345 F.3d at 1079 (citation omitted). While the motion provides a reason for denying Plaintiff his right to call this inmate a witness, it does not point to anything in the record where defendant Plumlee explained his reasoning during the disciplinary process. Nor did defense counsel supply a declaration from defendant Plumlee explaining his reasoning so that the court could make a determination as to the process provided Plaintiff at this juncture. *See Serrano*, 345 F.3d at 1079-80 (finding that where the record does not contain such an explanation, it is error to grant summary judgment).

In addition, Defendant Plumlee does not address Plaintiff's claim that he was denied his right to inmate substitute counsel. Nor does he address Plaintiff's claim that the documents were not logged and date stamped into the grievance record as required by statute.

Accordingly, the motion is denied as to the due process claim in Count 1 against defendant Plumlee.

**2. Defendant Williams**

Defendant Williams argues that Plaintiff has failed to allege any action or inaction that may be attributed to him.  (Doc. # 101 at 7.) In addition, he argues that prisoners have no constitutional right to a grievance system, and a prison official's involvement in reviewing a prisoner's administrative appeal cannot serve as a basis for liability. (*Id.* at 8.)

Plaintiff alleges that defendant Williams' constitutional violation is predicated upon his upholding defendant Plumlee's findings and his denial of second level administrative review. (Doc. # 38 at 6.)

Defendant Williams does not rely on materials outside the pleadings; therefore, the court will treat his argument as one for dismissal under Rule 12(b)(6).

At issue is whether Plaintiff has adequately stated a claim against defendant Williams when the only allegations he includes are that defendant Williams upheld the disciplinary determination made by defendant Plumlee and that he denied a second level of administrative review. With respect to his allegation that defendant Williams upheld the disciplinary determination made by defendant Plumlee, Plaintiff has not alleged that the underlying determination was not supported by "some evidence." *See Superintendent, Mass. Corr. Inst., Wapole v. Hill*, 472 U.S. 445, 455 (1985) ("[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board..."); *see also Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir.  2003).  Therefore, there are no allegations to implicate liability on the part of defendant Williams. Plaintiff should be given leave to amend to assert, if possible, a claim against defendant Williams based on the disciplinary determination.

To the extent Plaintiff alleges that defendant Williams violated his constitutional rights

1   by denying a second level administrative review, there is no constitutional right to a prison

2   administrative appeal or grievance system.  *See Man v.  Adams*, 855 F.2d 639, 640 (9th Cir.

3   1988).  Accordingly, this claim should be dismissed with prejudice.

4   **B.  Count 2**

5       **1.  Failure to Protect/Excessive Force**

6       Plaintiff alleges that he was the victim of an assault by another inmate, and defendant

7   Wright observed the incident and failed to notify the second floor officer in the unit who could

8   have prevented the assault from happening.  (Doc. # 38 at 7.)  He also claims that defendant

9   Wright stated in a disciplinary record that Plaintiff was a victim of the assault, but defendant

10  Wright attempted to shoot both Plaintiff and his assailant.  (*Id.*)

11      Defendants argue that Plaintiff failed to exhaust his administrative remedies with

12  respect to the failure to protect claim in Count 2, and that he fails to state a claim upon which

13  relief may be granted. (Doc. # 101 at 8-10.)

14      Plaintiff argues that he did exhaust his administrative remedies with respect to this

15  claim. (Doc. # 142 at 16.)

16      Defendants point to grievance 20062741648 in arguing that Plaintiff failed to exhaust

17  his administrative remedies. (Doc. # 101 at 9.) They assert that this grievance addresses the

18  medical care following the assault incident, but does not address the allegations involving

19  defendant Wright.  (*Id.*)

20      Defendants are correct that grievance 20062741648 makes no mention of the allegations

21  made in the Amended Complaint with respect to defendant Wright. (*See* Doc. # 101-4 Ex.  G

22  at 12-21.)  Instead, this grievance pertains only to Plaintiff's medical issues following the

23  incident.  (*Id.*) While inmates are not required to allege the precise legal theory to be advanced,

24  to properly exhaust their administrative remedies, inmates must provide sufficient information

25  in the grievance so that prison staff can address and respond to the situation. *Griffin v.  Arpaio*,

26  557 F.3d 1117, 1119 (9th Cir.  2009). There is nothing in this grievance that would alert prison

27  officials to any problem related to a failure to protect or excessive force involving defendant

28                                              10

Wright. Accordingly, insofar as Count 2 contains a claim against defendant Wright based on a failure to protect or excessive force, it should be dismissed without prejudice.

**2. Deliberate Indifference to Serious Medical Need**

Plaintiff alleges that as a result of the assault described above, he suffered a broken finger and received inadequate medical care.  (Doc. # 38 at 7.)

### i. Defendant Johns

Defendants argue that Plaintiff fails to state a deliberate indifference claim upon which relief may be granted against defendant Johns in Count 2. (Doc. # 101 at 10-11.)

Plaintiff maintains that defendant Johns did not provide adequate medical care.  (Doc. # 142 at 18-20.)

Defendant Johns relies on materials outside the pleadings; therefore this argument will be construed as a motion for summary judgment.

### a. Standard

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id*. (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v.  Chung*, 391 F.3d 1051, 1060 (9th Cir.  2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983.  *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.  2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir.  1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

In addition, a prison physician is not deliberately indifferent to an inmate's serious medical need when the physician prescribes a different method of treatment than that requested by the inmate. *See McGuckin*, 974 F.2d at 1059 (explaining that negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights); *Sanchez v.  Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of opinion regarding the best course of medical treatment does not amount to deliberate indifference); *Franklin v.  Oregon*, 662 F.2d 1337, 1344 (9th Cir.  1981) (difference of opinion between a prisoner-patient and medical staff regarding treatment is not  cognizable under § 1983). To establish that a difference of opinion amounted to deliberate indifference, the inmate "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and that the course of treatment was chosen "in conscious disregard of an

12

excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted).

### b. Analysis

In Count II, Plaintiff alleges that following the assault that occurred on May 3, 2008, he broke his left pinky finger and received inadequate medical treatment from defendant Johns. (Doc. # 38 at 7.)

Plaintiff's medical records regarding the May 3, 2008 incident indicate that Plaintiff relayed he was hit in the face numerous times by another inmate. (Doc. # 103-1 at 2 Ex. E.) It was noted that Plaintiff had red marks on his forehead and top of his head, as well as below both eyes across the bridge of his nose. (*Id.*) Plaintiff denied any pain in his face. (*Id.*) He was assessed as not requiring treatment. (*Id.*) No mention was made of an injury to a finger. (*Id.*) Nor does this record indicate treatment by defendant Johns. (*Id.*)

Plaintiff was apparently seen approximately a month and a half later by Dr. Long on June 18, 2008, and reported that he jammed his finger on May 3, 2008. (Doc. # 103-1 at 4 Ex. F.) Dr. Long noted that Plaintiff's finger was fractured, but it was not giving Plaintiff any pain and did not restrict his activity. (*Id.*) No treatment was recommended. (*Id.*)

The evidence introduced by Defendants does not show deliberate indifference on the part of defendant Johns. Nor has Plaintiff submitted any evidence to impose liability for deliberate indifference to a serious medical need on defendant Johns. The medical records do not indicate defendant Johns participated in Plaintiff's medical care. Even if they did, Plaintiff has not raised a genuine issue of material fact as to this claim. Rather, it appears Plaintiff has merely presented a difference of opinion with respect to the treatment he received for his finger injury. Accordingly, summary judgment should be granted as to the Eighth Amendment claim in Count 2 against defendant Johns.

### ii. Defendants Corda, Benedetti, and Helling

Defendants argue that Plaintiff fails to state a deliberate indifference claim upon which relief may be granted against defendants Corda, Benedetti, and Helling. (Doc. # 101 at 12.)

Plaintiff's Amended Complaint alleges that defendants Corda, Benedetti, and Helling were deliberately indifferent to Plaintiff's serious medical needs when they denied Plaintiff's grievances on this issue. (Doc. # 38 at 7.)

The court has determined that Plaintiff has failed to raise a genuine issue of material fact with respect to the alleged underlying constitutional violation; therefore, there is no basis for liability as to these defendants. Summary judgment should be granted as to defendants Corda, Benedetti, and Helling in Count 2.

**C. Count 3**

In Count 3, Plaintiff alleges that he was transferred to Warm Springs Correctional Center (WSCC) on July 11, 2008, and that his habeas corpus petition filed with the Eighth Judicial District Court was dismissed because of inadequacies with respect to the law library and legal assistance program at WSCC. (Doc. # 38 at 8.)

Defendants argue that Plaintiff fails to state an access to courts claim upon which relief may be granted as to defendants Moyle, Corda, Benedetti, and Reed in Count 3. (Doc. # 101 at 12-13.) Specifically, Defendants argue that Plaintiff was transferred to WSCC for his own safety, that Plaintiff had access to a law library at WSCC, and Defendant Reed was not personally involved in the transfer. (*Id.*)

Defendants rely on materials outside the pleadings; therefore, this argument will be treated as a motion for summary judgment.

Defendants provide the declaration of Matt Tilley, the Law Library Supervisor at Nevada State Prison and WSCC, who states that WSCC's law library is fully stocked with legal material and has everything on the approved publication list. (Doc. # 119 at ¶¶ 2-4.) He notes that if Plaintiff made a request for law library access at WSCC, it would have been given to him. (*Id.* at ¶ 4.)

Plaintiff states in his declaration that in 2008, Warm Springs had no law library in operation. (Doc. # 142 at 50, ¶ 3.) Instead, he maintains that all legal requests at WSCC were made by submitting an inmate request for a legal claim or reference material from the law

1   library at Nevada State Prison (NSP). (*Id.*)

2       Defendants also provide the declaration of Rex Reed, who states that his involvement

3   with respect to this matter was limited to responding to Plaintiff's grievance on September 3,

4   2008. (Doc. # 101-8 Ex.  U.)

5       Preliminarily, the court notes that Plaintiff spends much of his opposition discussing the

6   retaliatory nature of the transfer to WSCC, but the court did not find that Plaintiff stated a

7   retaliation claim in Count 3.  (*See* Doc. # 37.) Therefore, the court will only focus on the access

8   to courts claim in Count 3.

9       The constitutional right of access to courts "requires prison authorities to assist inmates

10  in the preparation and filing of meaningful legal papers by providing prisoners with adequate

11  law libraries or adequate assistance from persons trained in the law." *Bounds v.  Smith*, 430

12  U.S. 817, 828 (1977); *see also Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir.  2009).

13       The Supreme Court has held that the right of access to the courts, "guarantees no

14  particular methodology but rather the conferral of a capability- the capability of bringing

15  contemplated challenges to sentences or conditions of confinement before the courts...[It is this

16  capability] rather than the capability of turning pages in a law library, that is the touchstone"

17  of the right of access to the courts. *Lewis v.  Casey*, 518 U.S. 343, 356-57 (1996).

18       While Defendants claim that Plaintiff would have had access to adequate legal materials

19  had he requested them, Plaintiff maintains that there was no law library at WSCC in 2008, and

20  he was limited to submitting a request for materials from NSP.

21       The court finds that Plaintiff has raised a triable issue of material fact as to the extent

22  of his ability to access law library materials while he was at WSCC.

23       The court also finds that defendant Reed's single statement that his involvement was

24  limited to responding to a grievance does not establish he had no involvement in the alleged

25  denial of access to courts.  Defendant Reed merely provides reference to a September 3, 2008

26  grievance, but does not state where it is located in the record, if at all.  If Plaintiff's grievance

27  put him on notice of the alleged constitutional violation, and his duty as a grievance responder

28

15

1   is to attempt to resolve the issue, and he denied the grievance, it appears that Plaintiff does

2   indeed state a claim against him. Defendant Reed's statement is simply insufficient to establish

3   he is absolved of liability for allegedly denying Plaintiff's right of access to the courts.

4          Accordingly, Defendants' motion should be denied as to Count 3.

5   **D. Count 4**

6          In Count 4, Plaintiff alleges that he was charged and found guilty of a disciplinary

7   violation, but was denied the opportunity to present a witness. (Doc. # 38 at 9.) He asserts that

8   the disciplinary findings were made by defendant Hartman, and upheld by defendants

9   Benedetti, Helling and Corda. (*Id.*) Plaintiff asserts that defendant Vidaurri failed to list the

10  witness in his report. (*Id.*) He also asserts that defendants conspired to have him removed

11  from the prison yard for filing a previous lawsuit alleging inadequate medical care and access

12  to the law library. (*Id.*)

13         Defendants argue that Plaintiff failed to properly exhaust the claims in Count 4. (Doc.

14  # 101 at 13.) Defendants assert that grievance 20062713508 does not address this issue, and

15  grievance 20062700767 was rejected as improper, and abandoned by Plaintiff. (*Id.*)

16         Plaintiff argues that he properly exhausted his administrative remedies. (Doc. # 142 at

17  24.) Plaintiff asserts that these issues are covered by grievance 2006270767 and 20062113508.

18  (*Id.* at 24-25.)

19         Plaintiff's conspiracy allegations are not referenced in grievance 20062700767 or

20  20062113508. Therefore, the conspiracy claim should be dismissed without prejudice.

21         With respect to Plaintiff's claim that he was denied the opportunity to present a witness

22  in a disciplinary hearing, defendants assert that  grievance 20062713508 does not address this

23  issue. However, a review of this grievance reveals that it discusses this issue in detail. (*See* Doc.

24  101-7 Ex. R at 25-31.) Instead, the infirmity with the grievance lies with the fact that Plaintiff

25  did not complete the grievance process with respect to this claim.  The grievance was denied

26  as improper (*id.* at 26), and Plaintiff did not complete the grievance through the second level.

27         Plaintiff filed the informal level grievance for grievance number 20062700767 on March

28                                                16

20, 2008, concerning a disciplinary incident report prepared by defendant Vidaurii.  (Doc. # 101-5 Ex.  J at 5-6.)  In response, the prison stated that the grievance involves a disciplinary issue and instructs Plaintiff to resubmit a grievance appealing the results of the disciplinary hearing after it is concluded.  (*Id*.  at 4, 11.)

Plaintiff filed a first level grievance stating that a grievance appeal is the appropriate response to the results of a disciplinary hearing, and clarifies that he was not attacking the results of the hearing, but that defendant Vidaurii allegedly omitted crucial evidence affecting the outcome of the proceeding, including the identity of the witness Plaintiff wished to call at the hearing.  (Doc. # 101-5  at 13-15.)  The rejection of the grievance was upheld at the first level.  (*Id*.  at 4.)  Plaintiff was instructed that he had to attend the disciplinary hearing and at the hearing raise the question of the accuracy of the officer's report.  (*Id*.)  He was told that after the hearing, he would have the option to appeal the decision through the grievance process.  (*Id*.)  Plaintiff did not file a second level grievance.

Because Plaintiff did not complete the grievance process for grievance 20062700767, and apparently did not pursue and complete the grievance process after his disciplinary hearing was complete, this claim should be dismissed without prejudice for failing to exhaust available administrative remedies.

**E.  Count 6**

In Count 6, Plaintiff alleges that on April 13, 2007, at Southern Desert Correctional Center (SDCC), he was charged with a major disciplinary violation when he refused to cell with an inmate who was a smoker.  (Doc. # 38 at 11.)  He claims that defendants Plumlee and Williams retaliated against him when defendant Plumlee wrongfully found Plaintiff guilty and imposed sanctions and defendant Williams upheld defendant Plumlee's findings. (*Id*.) Plaintiff claims that his protected activity was his complaint about being housed with a smoker. (*Id*.)

Defendants argue that Plaintiff fails to state a retaliation claim upon which relief may be granted as to defendants Plumlee and Williams in Count 6. (Doc. # 101 at 13-15.)

Plaintiff maintains that he was punished by defendants Plumlee and Williams for

1   complaining about their responsibility to protect his health. (Doc. # 142 at 28.)

2       Here, Defendants rely on material outside the pleadings; therefore, the court will treat

3   this argument as a motion for summary judgment.

4       **1. Standard**

5       A plaintiff may state a claim for violation of his or her First Amendment rights due to

6   retaliation under 42 U.S.C. § 1983. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such

7   a claim consists of five elements: "(1) An assertion that a state actor took some adverse action

8   against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action

9   (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

10  reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68

11  (9th Cir. 2005) (citations omitted).

12      The inmate must (1) submit evidence, either direct or circumstantial, to establish a link

13  between the exercise of constitutional rights and the allegedly retaliatory action, and (2)

14  demonstrate that his or her First Amendment rights were actually chilled by the alleged

15  retaliatory action. *Pratt*, 65 F.3d at 806-07. Timing of the events surrounding the alleged

16  retaliation may constitute circumstantial evidence of retaliatory intent. *See Sorrano's Gasco,*

17  *Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). The Ninth Circuit has recognized that

18  prisoners have a fundamental First Amendment right to file prison grievances and pursue civil

19  rights litigation, and "because purely retaliatory actions taken against a prisoner for having

20  exercised those rights necessarily undermine those protections, such actions violate the

21  Constitution quite apart from any underlying misconduct they are designed to shield." *Rhodes*,

22  408 F.3d at 567 (citation omitted).

23      **2. Analysis**

24      As the court interprets it, Plaintiff is alleging that defendants Plumlee and Williams

25  imposed and approved disciplinary sanctions against Plaintiff because he was complaining

26  about being housed with a smoker.

27      Even assuming Plaintiff's complaint about being housed with a smoker constitutes

28                                                  18

protected activity, the court finds there is no evidence of a causal connection between Plaintiff's protected activity and the alleged retaliatory conduct, *i.e.*, the imposition and approval of sanctions against Plaintiff for a disciplinary violation.

Defendants have produced the relevant notice of charges. (Doc. # 101-2 Ex. B at 5.) The document indicates that on April 10, 2007, Plaintiff approached the Unit 8 control bubble stating that he refused to live with inmate "Macks" because "Macks" was a smoker. (*Id.*) Plaintiff stated that he was classified as a medical non-smoker, and Sergeant Shubert told Plaintiff that all cells at SDCC are non-smoking, and if Plaintiff refused to live with "Macks" he would be placed in segregation and would receive a notice of charges. (*Id.*) Plaintiff persisted in his refusal to live with "Macks," and was served with the notice of charges. (*Id.*)

Defendant Plumlee was the hearing officer presiding over Plaintiff's disciplinary hearing. (Doc. # 101-2 Ex. B at 8.) Plaintiff was found guilty of the charges. (*Id.*) The guilty finding indicates that Plaintiff should have followed procedure by speaking with the case worker rather than refusing to cell with "Macks." (*Id.*) The following sanctions were imposed: (1) 120 days of disciplinary segregation; (2) 365 days loss of packages; (3) 180 days loss of store; and (4) 180 days loss of phone. (*Id.*)

The disciplinary violation of which Plaintiff was convicted, an MJ 28 violation, is defined as a disruptive demonstration or practice, and is considered a major violation under NDOC AR 707. (Doc. # 101-3 Ex. C at 21-23.) The MJ 28 violation is a Class B violation. (*Id.*) Eighteen months of disciplinary segregation is the minimum amount of sanctions that could be imposed for a first offense Class B violation. (*Id.* at 44.) Therefore, the imposition of sanctions was within the administrative guidelines.

Defendants have presented evidence to rebut Plaintiff's contention that he was disciplined as a result of his alleged protected conduct. Plaintiff, on the other hand, presents no evidence to support his contention that he was disciplined *because* he complained about having to live with a smoker. Plaintiff's mere speculation that this is the case is not enough to raise a genuine issue of material fact. *See Nelson v. Pima Community College*, 83 F.3d 1075,

19

1   1081-82 (9th Cir. 1996) (citation omitted) ("mere allegation and speculation do not create a

2   factual dispute for purposes of summary judgment").

3       Accordingly, the court finds that summary judgment should be granted as to Count 6.

4   **F.  Count 7**

5       **1.  Medical care claim**

6       In Count 7, Plaintiff alleges that following an alleged incident of excessive force, he

7   requested but did not receive medical care. (Doc. # 38 at 12.)

8       Defendants argue that Plaintiff failed to properly exhaust his administrative remedies

9   with respect to the medical claim in Count 7. (Doc. # 101 at 15-16.)

10      Plaintiff argues that these claims are exhausted by grievance numbers 2007263173,

11  20062730827, 519108, 20062742735, 200796537, and 20062674507. (Doc. # 38 at 12, 16.)

12          **a.  Grievance 2007263173**

13      While Defendants were unable to locate the original grievance for grievance

14  2007263173, the NOTIS report indicates that grievance 2007263173 relates to the alleged

15  confiscation of property. (*See* Doc. # 101-5 Ex. K at 17-25.) However, without reviewing the

16  actual grievance documentation, the court cannot determine the entirety of issues raised in this

17  grievance as the NOTIS report contains only a summary of grievances.

18          **b. Grievance 20062730827**

19      Grievance 20062730827 relates to Plaintiff's bunk classification, and his request to be

20  classified to a lower bunk. (*See* Doc. # 101-6 Ex. L at 2-10.)

21          **c. Grievance 51908**

22      Grievance 51908 is an emergency grievance form submitted by Plaintiff on May 7, 2008.

23  (Doc. # 101-6 Ex M at 12.) While Defendants represent that this grievance only relates to an

24  administrative segregation hearing, the grievance specifically references Plaintiff's claim that

25  he was experiencing headaches, nightmares, and dizzy spells as a result of an assault. (*Id*.)

26  Plaintiff also states that nursing staff were aware of the issue but had not been addressed. (*Id*.)

27  The prison's response to the emergency grievance merely states that Plaintiff had not presented

28

1  an emergency and would need to utilize the normal grievance procedures to address this issue.

2  (*Id.*)

3      **d. Grievance 20062742735**

4      Grievance 20062742735 relates to Plaintiff's complaint regarding being celled with a

5  relative of one of Plaintiff's enemies. (Doc. # 101-6 Ex. N at 14-22.)

6      **e. Grievance 200796537**

7      With respect to grievance 200796537, Defendants represent that they were unable to

8  locate a grievance with this number in NOTIS or amongst Plaintiff's original grievances;

9  however, based on the date Plaintiff listed as having filed the grievance, it appears Plaintiff was

10  actually referring to grievance 20062620877. (*See* Doc. # 101 at 15, n. 4.) Defendants state that

11  this grievance addresses Plaintiff's request for a cell change because Plaintiff did not wish to

12  be housed with someone who smokes, as well as not being able to call a witness at the

13  disciplinary hearing. (*Id.* at 16.) Defendants reference Exhibits O and P in support of their

14  argument. (*Id.*)

15      Exhibit O consists only of a grievance printout with what appears to be a summary of

16  Plaintiff's complaint of being assaulted by Correctional Officer Jackson. (Doc. # 101-6 at 24.)

17  Exhibit P consists of a notice of charges and summary of disciplinary hearing and disposition.

18  (Doc. # 101-7 Ex. P at 2-13.) Not only do Exhibits O and P not contain the information

19  Defendants represent that they contain, but Exhibit O does reference grievance *200796537*,

20  which Defendants assert they were unable to locate in Plaintiff's grievance file or NOTIS.

21  Because Exhibit O makes reference to grievance 200796537, it is reasonable to infer that it does

22  exist.

23      Defendants did provide documentation related to grievance 20062620877 in Exhibit S

24  (Doc. # 101-8 Ex. S at 2-8), but they did not provide the original grievance documentation to

25  allow the court to determine whether or not Plaintiff raised the medical claim issue in that

26  grievance.

27  ///

28

### f. Grievance 20062674507

Defendants conclude that grievance 20062674507 was not accepted because it was improper, but failed to present the original grievances or any other documentation that outlines the subject matter of the grievance so that the court can make a determination as to whether Plaintiff properly exhausted his administrative remedies with respect to the medical claim in Count 7. (*See* Doc. # 101-7 Ex. Q at 15-23.)

### g. Conclusion

Because the court cannot make a determination as to whether Plaintiff exhausted his administrative remedies by way of grievances 2007263173, 20062674507, 200796537, or 20062620877, Defendants have not met their burden of proving their exhaustion defense, and their request for dismissal of Count 7 should be denied without prejudice. *See Wyatt*, 315 F.3d 1108, 1119 (9th Cir.2003) (defendant has the burden of pleading and proving exhaustion defense).  If Defendants can locate the documentation to support their defense, they should be able to renew their motion as to this claim.

### 2. Excessive Force and Failure to Protect Claims

Defendants admit that they are unable to definitively show that Plaintiff did not properly exhaust his administrative remedies with respect to the excessive force and failure to protect claims, yet argue that Plaintiff did fail to exhaust.  (Doc. # 101 at 17.)

Failure to exhaust administrative remedies is an affirmative defense which Defendants bear the burden of raising and proving. *Wyatt*, 315 F.3d 1108, 1119 (9th Cir.2003).  Defendants admit they are unable to meet this burden at this juncture; therefore, the motion to dismiss these claims should be denied.

### G. Count 8

Defendants argue that Plaintiff failed to properly exhaust his administrative remedies with respect to the claims in Count 8. (Doc. # 101 at 18.)

In Count 8, Plaintiff alleges that defendants conspired to remove him from the yard by filing frivolous disciplinary charges against him in retaliation for Plaintiff's filing of previous

1  lawsuits against prison officials. (Doc. # 38 at 13.) On screening, the court found that Plaintiff

2  states colorable claims for conspiracy and retaliation. (Doc. # 37 at 11.)

3  Defendants argue that the grievances Plaintiff asserts he used to exhaust his

4  administrative remedies for these claims, grievances 20062700767 and 20062713508, do not

5  address the issues of conspiracy or retaliation. (Doc. # 101 at 18.) Plaintiff simply argues that

6  these claims should go forward. (Doc. # 142 at 31.)

7  Grievance 20062713508 involves Plaintiff's claim that he was not allowed to present a

8  witness at a disciplinary hearing, and the grievance process was not completed. (Doc. # 101-7

9  Ex. R at 25-31.)

10  With respect to grievance 20062700767, Defendants refer to Exhibits R and S in support

11  of their argument. (Doc. # 101 at 18.) Exhibit R refers to grievance 20062713508. (Doc. # 101-

12  7 Ex. R at 25-31.) Exhibit S refers to grievance 20062620877. (Doc. # 101-8 Ex. S at 2-8.)

13  Grievance 20062700767 is actually referenced in Exhibit J. (Doc. # 101-5 Ex. J at 4-15.)

14  In this grievance, Plaintiff states that defendant Vidaurii's report misrepresented or omitted

15  certain facts related to an incident that was the subject of a disciplinary hearing. (*Id.*) The crux

16  of his grievance is that defendant Vidaurii omitted crucial evidence affecting the outcome of the

17  disciplinary proceeding. (*Id.* at 13.)

18  Grievance 20062700767 does not place prison officials on notice of a claim that

19  defendants conspired to remove him from the yard by filing frivolous disciplinary charges

20  against him in retaliation for Plaintiff's filing of previous lawsuits against prison officials.

21  Accordingly, Defendants' motion to dismiss Count 8 for failure to exhaust administrative

22  remedies should be granted.

23  **H.  Official Capacity Damages Claims**

24  Finally, Defendants argue that Plaintiff's allegations against them in their official

25  capacity fail to state a claim upon which relief may be granted. (Doc. # 101 at 18.)

26  A state official sued in his or her official capacity for *damages* is not a person subject

27  to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Claims

28

against defendants in their official capacities are actually suits against the entity of which the named defendants are agents. *See Kentucky v. Graham*, 473 U.S. 159 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. The real party in interest in such suits is the entity itself, and the entity, not the named defendant, will be liable for any damages. *Id.*

Defendants' motion should be granted as to Plaintiff's official capacity damages claims. However, Plaintiff also seeks injunctive relief (Doc. # 38 at 16), and Plaintiff's official capacity claims may proceed in this regard.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

(1) **DENYING** summary judgment as to Count 1 insofar as it is asserted against defendant Plumlee;

(2) **GRANTING** the motion to dismiss **WITH PREJUDICE** as to Count 1 against defendant Williams insofar as it alleges that defendant Williams denied Plaintiff's right to a disciplinary appeal, and **GRANTING WITH LEAVE TO AMEND** the motion to dismiss Count 1 against defendant Williams with respect to the allegations that defendant Williams improperly upheld a disciplinary determination;

(3) **DISMISSING WITHOUT PREJUDICE** the Eighth Amendment excessive force/failure to protect claim in Count 2;

(4) **GRANTING** summary judgment as to the Eighth Amendment deliberate indifference claim in Count 2;

(5) **DENYING** summary judgment as to the First Amendment access to courts claim in Count 3;

(6) **DISMISSING WITHOUT PREJUDICE** the claims in Count 4;

(7) **GRANTING** summary judgment in favor of defendants as to Count 6;

(8) **DENYING** the motion to dismiss for failure to exhaust administrative remedies as

24

to the claims in Count 7;

(9) **DISMISSING WITHOUT PREJUDICE** the retaliation and conspiracy claims in Count 8;

(10) **DISMISSING** Plaintiff's official capacity damages claims.

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: May 14, 2012.

_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE